34 C.C.P.A. (Patents)

### In re FLUDE.
### Patent Appeal No. 5265.

Court of Customs and Patent Appeals.
Feb. 11, 1947.

Rehearing Denied March 21, 1947.

Randolph B. Cousins, of New York City (Cousins & Cousins, of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

O'CONNELL, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting claims 1, 2, and 19 to 24, inclusive, comprising all the claims in appellant's application for a patent for alleged "new and useful improvements in Island and Method of Making."

Claims 1, 2, and 23 are illustrative and sufficiently descriptive of the involved subject matter. They read—

"1. The method of forming a natural island which consists in selecting a desirable location, dredging around the location, depositing the dredged material on the location and continuing the process until an island is formed above water.

"2. The method of extending the territorial boundaries of the United States which consists in selecting appropriate locations and forming islands on such locations.

"23. The method of acquiring oil reserves under waters beyond the territorial limits of the United States, which consists in locating an oil deposit beyond the normal three mile limit, forming an island thereover by dredging around the location and placing the dredged material over the deposit until an island is formed and then claiming sovereign title to the island and the waters surrounding it and subsequently drilling the island for oil.

The references are—

"The Engineer" describes "Sinking Deep Caissons by the Sand-Island Method" for offshore piers in the Mississippi River above New Orleans for the purpose of supporting a bridge across the river. A method of making an artificial island at a desired location in the bed of the river is related by which sand obtained conveniently by dredging at a point about a mile away was deposited on the location.

The "Engineering News-Record" describes the making of deep sand islands by depositing dredged material at desirable locations and sinking circular caissons within such islands to a depth of about 100 feet below water level for the purpose of erecting bridge piers in the bed of the Neches River near Port Arthur, Texas.

The examiner rejected the claims for the stated reasons that claims 1 and 2 were fully met by either of the cited publications and as an engineering project the methods claimed were clearly met by such references; that the methods claimed are clearly aggregations; that the claims involve a matter of public policy; that the patent laws are not applicable to the performance of the claimed methods beyond the territorial limits of the United States as called for by claims 19 to 24, inclusive; and that the claims are drawn to a method of doing business and as such are beyond the scope of the patent laws.

The Board of Appeals in affirming the action of the examiner held that there was no invention in locating oil within or beyond the three mile limit or in forming an island over the deposit and drilling the formed island to obtain the deposit; that the formation of the island was broadly old and that there was no operative relation in the sense of the patent laws between the step of claiming sovereign title to the island and the step of locating the deposits as defined by the rejected claims.

With specific reference to claims 19 to 24, inclusive, the board held that they were aggregative; and to the extent that illustrative claim 23 might not be considered aggregative, such claim stated only expedi-

| | | |
|---|---|---|
| "The Engineer" | Pages 556–558 | May 14, 1937 |
| "Engineering News-Record" | Pages 421–424 | Sept. 9, 1937 |

ents which are obvious with obvious effects and therefore involved no patentable subject matter; and that the limitation claiming sovereign title to the disclosed islands relates to matter not concerned with the Patent Laws.

Appellant points out that the application here in issue is a divisional application containing claims the allowance of which he alleges is necessary or desirable to protect and to carry into effect the subject matter of his parent patent, No. 2,283,200, issued for a method of making seismographic surveys to locate sub-aquatic deposits, principally oil.

Appellant contends that the cited references do not anticipate the claimed methods; that the claims are not aggregations but define an operative relationship of steps which renders the combination as an entirety the subject matter of a patent; and that there is invention in locating oil beyond the three mile limit, forming an island over the deposit, and drilling to obtain the deposit.

Appellant further contends that the usefulness of the result produced by the construction of these islands is apparent in view of the Presidential Proclamation of September 28, 1945, in which the President stated the need for new sources of petroleum and other minerals, and that the use of the island as defined by the rejected claims is a distinct improvement over any other method of underseas mining which constitutes a new and useful result amounting to invention, citing O'Reilly et al. v. Morse et al., 15 How. 62, 14 L.Ed. 601.

During the prosecution of the application before the tribunals of the Patent Office, appellant stated—"* * * it is concededly old to increase land areas along bodies of water and to alter shore-lines by dredging and fill, such as the Washington Airport. The idea of extending the shore-line by dredging and fill is concededly old, as shown by the fact that the lower end of Manhattan Island is entirely a matter of fill. * * *"

The court considers that it would not require the exercise of the inventive faculty to form an island by the same method of dredging and filling that was employed in extending the lower end of Manhattan Island.

The cited publications, moreover, disclose the formation of islands in a body of water, which islands were used as the bases for further engineering purposes. No patentable distinction over such references is disclosed by appellant in the location of formed islands within or beyond the three mile limit and drilling such islands for deposits, although the islands disclosed in the references were formed of material which may have been obtained from a source other than by dredging around the immediate location of such islands.

■ It is clear that the step of claiming sovereign title to the island defines no mechanical or other essential relation between that step and the other steps of the recited methods upon which appellant relies as defining invention. Under such circumstances the methods claimed do not constitute a combination of elements and the claims are subject to rejection on the ground that they constitute an aggregation of unrelated functions. In re Grapp, 64 F. 2d 376, 20 C.C.P.A., Patents, 1042.

■ Appellant correctly states that neither the tribunals of the Patent Office nor the courts properly may determine questions of public policy contrary to the expressed will of Congress. Broos v. Barton, 142 F.2d 690, 31 C.C.P.A., Patents, 1089. The cited Presidential Proclamation and the Patent Laws contain no provision which in the opinion of the court authorizes the allowance of the rejected claims upon the facts presented by the record.

In view of that conclusion it would serve no useful purpose to state and pass upon other points which have been discussed by the tribunals of the Patent Office or the respective parties to this appeal.

The decision of the Board of Appeals is accordingly affirmed.

Affirmed.